Good morning. My name is Catherine Kikefer. I'm court-appointed pro bono counsel for the appellant Mr. Garcia-Illenes, and I would like to reserve three minutes for rebuttal. In denying Mr. Garcia-Illenes' petition for deferral of removal under the Convention Against Torture, the agency disregarded highly probative and potentially dispositive evidence, including the credited testimony of Mr. Garcia-Illenes' expert, Dr. Cook. The immigration judge's rejection of Dr. Cook's testimony on decompensation is completely divorced from her testimony regarding the pervasiveness of his mental health disorders and the extensive medical treatment that he requires, and the failure to address that testimony was legal error. And so for at least that reason, we would ask this court to remand the case to the agencies for further proceedings. Ms. Kikefer, what about Dr. Cook's testimony is dispositive? I understand there's a matrix of factors here, and at least one of the things I've been trying to puzzle through is how we're supposed to break those down with respect to the question of decompensation. Yeah, I think, you know, we need to take a step back here, and, you know, Dr. Cook was the only expert to conduct a neuropsychiatric evaluation with behavioral observation. She was the only one to meet with Mr. Garcia twice. She was the only expert to testify before the immigration judge. And so her testimony about his mental health, the pervasiveness of it, and the extensive medical care he requires goes unrebutted in the record. Right. But those are just a flag. Those examinations were not done for the purposes of establishing whether he would decompensate in Mexico. For that, we only have the testimony. Of course, it's backed by the findings of there, but what about there is dispositive? I guess if I can break this down a little bit more, right, we've got, I'm not sure whether it's one link or two in the chain, but we have some issues, some testimony about what the petitioner needs, structured environment, medical treatment, family support, regular employment, et cetera. But we don't have much, nothing in the testimony as far as I can tell, and for that matter, not much, if anything, in the agency's decisions that those would be things he would not have in Mexico. And so help me link that chain. What is dispositive about, from Dr. Cook's testimony, that would take us from both that he needs this and that he would not have it in Mexico? And so I think, you know, I would point to, you know, the agency said he wouldn't decompensate because they focused on he's not receiving medication and he hasn't been institutionalized before. But that's not, you know, it's unclear where that standard comes from, and that's not the care that Dr. Cook said he requires. She said he needs consistent medical treatment and he needs that structured environment. And I would point you to the agency's actually recognized that Mr. Garcia-Yenes would have trouble obtaining medical care, and it is that access to medical care that helps stabilize him, particularly for his somatic symptom disorder. And so, you know, I think there are layers here, I agree, but, you know, he has a somatic symptom disorder, he requires consistent and regular access to medical care, and this is amply reflected in the record with the voluminous medical records we have. And both agencies recognized he would not be able to access that medical care if he were in Mexico. Can you point me to where you're landing this finding that he would not get or would have trouble accessing medical care in the agency's decision? Yes, so they said at page 58 of the IJ's decision, you'll say, although accessing medical care in Mexico may present a challenge for respondent. They specifically say that. But then they say it's a lack of medications he's currently receiving would not result in decompensation. But that's not what Dr. Cook said would result in decompensation. Okay, thank you. Let me ask, if I look at the IJ, let's start with the IJ's decision, right? So from my understanding of your argument, it's more likely than not that he will not have family support medical care, then it's more likely than not that he will then, therefore, decompensate. Then it's more likely than not that he would then come to the attention of law enforcement. Then it's more likely than not that law enforcement would then forcibly institutionalize him. Then it's more likely than not that he will then be harmed in one of those institutions. Then it's more likely than not that that harm would constitute torture, right? That's your argument. Yes, but Okay, so let me ask, if I look at the IJ's decision first, right? And I'm looking at DR-62, it does say, because the respondent cannot demonstrate a likelihood of even this first link in the hypothetical chain of events, the court concludes respondent's claim necessarily fails on every subsequent link, and he has not shown that each step in the hypothetical chain of events is more likely than not to occur. So that is where they're addressing step one, the decompensation, right? But then he has an entirely, if that was the only basis for the IJ's decision, why not just end the decision right there? But instead, there's this whole second paragraph that goes through all the country conditions evidence regarding the treatment of people who are in mental health facilities in Mexico, and ends with, as such, the court finds that the record demonstrates that some torture occurs against individuals in these institutions. Nonetheless, respondent failed to demonstrate that he personally would be subject to such conditions on return to Mexico. And so if you look at the exhibits that the IJ cites, right, if you look at those exhibits, they say that for a population of 129.2 million inhabitants of Mexico, there are 39 psychiatric hospitals. So that's 3.3 million people per hospital. They say that in 2018, the Mexican government acknowledged that inhumane treatment occurred in five of the 38 psychiatric hospitals in the country. The Disability Rights International report examined 25 blacklist facilities, but found only eight had prolonged use of restraints, and only 10 had widespread indications of overmedication. So, you know, this is the record evidence that the IJ's opinion cites as to the numbers of who, how many, you know, how many hospitals are engaged in this conduct, which the IJ concedes could constitute torture. So I guess that's why I'm having a little bit of difficulty looking at that IJ decision. Why would you have that second paragraph? Why would you even cite country conditions evidence if you were only deciding the issue of decompensation in the first link, first chain, first link in the chain of events? I would, probably for completeness, you know, to hit all of the issues the IJ is supposed to address. Right, but what are the other issues? Aren't the other issues where he would personally be tortured in a psychiatric facility in Mexico? Yes, and I would argue that... Is that a ruling then on that basis? I would say yes. I believe... So then there are two bases for the IJ's ruling. One was the first link in the chain, no decompensation, and then the last one is he personally hasn't demonstrated that it's more likely than not that he personally would be tortured. But I think those two are connected in that he has not shown that he would decompensate and end up in an institution, and because of that, he has not shown he would end up subject to... No, but why would you go through all the country conditions evidence about what is happening at mental health institutions in Mexico if you thought he was never going to be institutionalized? Right? You would never have to even reach that discussion if you're just going to decide link one, decompensation. I think the IJ would still need to address the other links because failure to address those links could then render it a... Right, so then he did issue a ruling on the last link of the chain, which is Mr. Garcia Yanez has not shown that it is more likely than not that he would be tortured in a mental health institution in Mexico. Yes, and I would say that embedded in that decision is the understanding that he would not end up institutionalized because if you look at the same evidence, it shows that individuals who are difficult to control, who might get aggressive, which is the decompensation that Dr. Cook said Mr. Garcia Yanez would experience, those individuals are subject to physical restraint, chemical restraint, and other forms of torture. On that last point, there's no, I guess, trying to understand this. It seems like if you concede the point that there is a finding on the record that if he were institutionalized he would not be tortured, there's no expert testimony on that. We're just, if there's substantial evidence of that, that's the end of the cat claim, is it not, if you concede that? The substantial evidence in the record on the country report shows that he would be subject to that torture. Well, no, this is, but you'd have to concede that as to that last link in the chain, we're just back in substantial evidence, right? There's no protection for dispositive and highly probative findings. There's no expert testimony to that. So you consider the country conditions report, which is enough, and if, so if the IJ reached that issue, why is that not the end of the claim? Why does that not give away every other link you've been trying to establish before that? Because the evidence, that substantial evidence shows that he would be subject to such conditions. But how does it, if we're saying 5 out of 38 psychiatric hospitals, 8 out of 25, like where is the evidence that he is more likely than not going to be put in those specific five hospitals? I guess I'm having difficulty with that assumption there. I don't recall anything in Dr. Cook's testimony saying, yes, and he will specifically, you know, is more likely to go into one of those facilities versus one of the others who have not been found, even by the Disability Rights International organization, to not engage in those practices. I would say the country reports show that it is more widespread than that. You know, at page 953, it said there's widespread torture at institutions across Mexico City. What is that number? This is at the record at 953. You know, at 989, they looked at 20 institutions in Mexico City, like Veracruz, you know, and where else have I got it? You know, at 1148, there's a 2020 article that highlights the... Okay, but 953 is the Disability Rights International organization that I have been quoting from. Yes. So and I'm looking at 953, and that's actually where that 8 number comes from. So what, tell me what's the specific language from this page that I should be looking at? Because it says that they, DRI, conducted investigations into 22 institutions over 18 months from January 2014 to June 2015, and they said in eight of the institutions visited by DRI, we found prolonged use of restraints, which can amount to torture. Yes, and that is in Mexico City. And then if you look at 989, which is another DRI report, they visited 20 institutions in Mexico City in the states of Jalisco, Mexico, Oaxaca, Puebla, and Veracruz. And note that in most of these facilities, people are abandoned for their lifetimes and languish. So it's not just like eight institutions in Mexico City, there's evidence throughout the record of the pervasiveness across states of Mexico. That sounded like you said, which states? These states. Jalisco, right, where Guadalajara is located. What were the other ones? Mexico, Oaxaca, Puebla, and Veracruz. Okay, so where is the evidence that it's more likely than not that he's going to go to one of the institutions in those states? And I would say the state of, you're talking about Mexico City, right? When you're talking about the federal district of Mexico, that's Mexico City. So let's, I mean, where is the evidence that it's more likely than not that he's going to be put in one of those states? Jalisco, Veracruz? So it, the record's a little unclear about where exactly he would be deported to, but he grew up in a town about an hour south of Mexico City, so that may be where he ended up. And, you know, again, the record shows that, you know, people are institutionalized often indefinitely and involuntarily simply for being homeless, for minor disabilities, whereas here I believe the record reflects he has a very pervasive mental health disorder. I am mindful of my time, but... Ms. Kekavar, I guess I'd just suggest or ask if, at least my view, at a point in which we're going back and forth line by line in the record, if the standard is substantial evidence and it doesn't turn on the Cole, Castillo, Velasquez standards for highly probative, we're at substantial evidence, and that's an area where usually courts are quite skeptical of arguments that we could reach a different conclusion than did the IJs. So I think that if the IJ, if the agency decided this point, we're in substantial, what I would take from that is that we're in substantial evidence and your arguments about Ms. Cook and these other cases are about Dr. Cook fall by the wayside. I just, I'd like you to be able to confirm that on rebuttal perhaps. And I'll give you two minutes for rebuttal. I appreciate that. May it please the Court, Colin Tucker for the Attorney General. There are two grounds for denying this petition for review. The first is that Petitioner has waived review of the dispositive determination that he failed to show the harm, any harm he experiences in a Mexican mental health institution will be inflicted with the requisite specific intent. That is, if you will, the final link in the chain. The second is that Petitioner's fear of torture is premised on a belief that he will be institutionalized in Mexico, but the record does not compel the conclusion that he will be institutionalized if he returns to that country. On the first point, I guess as I'm trying to understand what the agency did in fact decide with respect to this last link, the government doesn't take the position, or it didn't as far as I can tell in the briefs, that the problem with the last link was that he would not be located in one of the relatively few institutions where torture may occur. The government made this different argument about an establishment of specific intent. So I guess maybe you can walk me through where you're reading in the agency's findings where you think the best place to land the failure of this last claim exists, because I didn't take any of our argument with your friend to revolve around the specific intent question at all. It was all around this record-specific question about whether he would actually, in fact, be in one of those institutions. Where should we look? Where's the best place to look where the IJ did reach this issue? Martinez, Jr. Sure, Your Honor. At page 56 of the immigration judge's decision, you have a statement that torture must be inflicted intentionally and a citation to the Court's decision in Theotis, which is arguably the seminal Ninth Circuit decision that discusses the specific intent requirement. From there, at page 62 of the immigration judge's decision, you have another citation to Theotis with a statement. Okay. But 56 is just laying out the standard, right? That's not the IJ's finding, is it? It's not, Your Honor, but the nature of the standard the immigration judge lays out sometimes can, you know, provide some indication of the what the later rulings the specific But I think that IJ's ruling is really more on page 62, and I don't see any ruling on specific intent here. Well, Your Honor, at page 62, you have the citation to Theotis again, which is against specific intent case law, and then you have the finding that even if some harm in I'm sorry. Can you point to the specific language in here that is a specific intent ruling? Sure, Your Honor. You have the immigration judge's statement that even if some harm in Mexican institutions is inflicted, Petitioner failed to show that he will be a victim of such harm. Perhaps most telling But that's a, is that not a discussion more to what we were exploring on the opening argument about whether he'd be put in that situation? I don't see anything. Where should we look for the intent? Because that's about the harm to the Petitioner. I understand your argument to be that the government actors lacked the intent, and I guess with Judge Koh, I'm struggling to find where the agency reached that so that we could even review it. Well, again, Your Honor, I've discussed the immigration judge's decision thus far. I think most tellingly at page 4, you have the Board's decision, which explicitly affirms Petitioner failed to show he will be subjected to harm, quote, with the requisite specific intent. I don't think that can be read as anything other than a finding, really, that Petitioner failed to show the harm he fears will be inflicted. And what's the evidence that we should look to that supports that finding? Where is there substantial evidence anywhere in the record on that intent side of the what's happening in the institutions? Well, as an initial matter, Your Honor, I don't want to, well, I was about to say I don't want to be argumentative. That's what we're here for. Go ahead. I would push back against the suggestion that the government has to identify substantial evidence that supports the decision here. I think substantial evidence standard requires Petitioner to identify evidence that compels a contrary conclusion. Can I just tell you, I actually think that there is a contrary specific intent ruling in the IJ's decision. Because the IJ says, while a lack of training, funding, or staffing may explain the inappropriate and damaging use of physical restraints, medication, or surgery, these deficiencies cannot explain away the occurrence of rape, sexual assault, and physical harm committed against persons with disabilities in these institutions. So my understanding is that the agency below was, or I guess the government, was arguing, hey, if any of this torture happens in these mental health institutions in Mexico, it's because of lack of training. It's because of lack of funding. It's because of inadequate staffing. It's not because people have this specific intent to harm. And this IJ decision is explicitly rejecting that argument of the government. So to me, that's actually a, almost a specific intent ruling against you. Your Honor, the portion of the immigration judge's decision you're reading from, which I believe is also AR-62, the immigration judge goes on to state, as such, the court finds, demonstrates, some torture occurs against individuals in these institutions. Nevertheless, Respondent failed to demonstrate that he personally will be subjected to this. But it's odd to describe, after reciting these things, that such conditions that the Petitioner would experience include the intent of those who are imposing those conditions on them. It just seems like a very strange way for the IJ to have reached that issue. Well, for me, Your Honor, I think it's understandable because the immigration judge wants to make clear that he's not completely disregarding the idea that these sorts of things happen. But he's recited this, or the IJ has recited the standard and doesn't close the loop, at least in this paragraph. Again, there's no discussion. Of course, the overall standard for torture requires that intent. But the IJ here is not coming back and saying anywhere, as far as I can tell, thus the requisite specific intent is not there. The IJ is talking about the conditions, not the intent. Well, the conditions are what the conditions absent the intent are what makes for the IJ's finding, Your Honor. I don't think you can have a discussion of one without the other, particularly in the context here of the citation of Yagas. What would be the substantial evidence if we find that the IJ found and the BIA found that Mr. Garcia Ynenes didn't demonstrate that he was more likely than not personally be subject to torture in Mexico? The substantial evidence in support of that finding, Your Honor? Yeah. I think would be the evidence that's discussed at page 62, that the country condition reports which address the show that harm along the lines necessary to make out a cat claim doesn't occur in a majority of the institutions in Mexico. And also the dearth of evidence suggesting that institutions where that harm may occur, that the Petitioner will end up in them. What if we think that it's not clear whether the IJ and the BIA ruled on this alternative ground? Do we then remand back to the BIA to clarify whether it made one finding or two? No, Your Honor, because we believe also that substantial evidence supports the immigration judge and the board's determination that the first link in the chain wasn't completed, if you will. But is not our substantial evidence standard of review overlaid with the Cole Once the expert has put highly probative and dispositive opinions or evidence on the table, the IJ must expressly consider them? Sure, Your Honor. I think that those decisions are somewhat less dispositive than you just framed them there. I know, for example, Castillo holds that where there is expert testimony, that testimony cannot be disregarded solely due to the lack of corroborating evidence that supports the expert's testimony. Well, Cole seems to suggest that there has to be some consideration of that evidence. Oh, I agree, Your Honor. And I would push back strongly against the suggestion that there was no consideration of the experts. Well, I think that's the question. I think one of the other puzzles for me in this case is that what we have here is not, as we seem to have in those other cases, the wholesale rejection of an expert's theory as speculative. Instead, we have, according to Petitioner's argument, a failure to consider maybe there are kind of five pieces that build that link in the chain, a lack of family support, social isolation, trouble finding employment, a lack of suitable medication, and a lack of a structured environment, with particular emphasis on those last two pieces. And I'd like your help in finding where the IJ — the IJ talks about the medication, but as we know, Dr. Cook's opinion is not that we need any psychotropic medication here. We just need something to treat the headaches. So the question really about that lack of structure, I'm having trouble finding where the IJ addressed it, and I also see in other places the IJ seeming to address points that reflect a misunderstanding of Dr. Cook's theory or even of the Petitioner's personal history. The condition here that's at issue has only happened since Petitioner's been in  And so whether the Petitioner had a job or had family support or had whatever else going on before 2018 doesn't matter here. What matters is whether in — if he's removed, whether he'll decompensate. And Dr. Cook says he decompensates when he lacks structure and regular medical treatment. So where does the IJ address those pieces, particularly the structured environment piece, that he's kind of — feels safe in detention and that he may not have that in Mexico? Well, Your Honor, I think the IJ discusses Dr. Cook's testimony quite thoroughly, perhaps does not explicitly hit on each of the five things that you mentioned there. But I think overall, the immigration judge's determination is that Dr. Cook's testimony here, as it must be, is inherently speculative, because as you yourself noted, we have no evidence of how he would be with this condition. Is it — so what do we do here where an expert — let's assume that the expert has said he needs this, and there's no evidence in the record of whether he will get this, let's say structured environment in Mexico, is — are we still in kind of the coal factors of where the district court has to consider all of those, or is it back on the Petitioner to establish something in the record that compels us to find that he would not get, say, a structured environment in Mexico? It would, I believe, be the second one, Your Honor. A Petitioner at all times bears the burden of demonstrating eligibility for release. But doesn't that undermine it? If it's a central piece of the expert's opinion, even if the I.J. kind of is able to dance around and talk about some of the other aspects of the expert's opinion, if the core of the expert's opinion is that the Petitioner's psychological condition here is more subtle than something that can be dealt with psychotropic as kind of environmental factors, and there's a suggestion that he's not going to get that, he needs a particular environment here, why shouldn't the I.J. have to consider that for us to know that the I.J. really understands the theory that's being presented? Your Honor, I wouldn't agree that the immigration judge didn't consider it. I think the immigration judge simply found evidence that cuts against the expert's view of the decompensation here. Because of what? Because, Edith, where in the I.J.'s opinion do they discuss that the Petitioner would have available a structured environment, for example, if he were removed? Your Honor, I don't know that structured environment specifically is noted. I think the immigration judge is – Or regular medical – regular primary care, like he's been getting in detention. Of the nature that he's been getting in detention, Your Honor, I don't know that that's in there either. I do know – But doesn't Dr. Cook say that he needs both of those things to avoid decompensating? Dr. Cook said that the ideal course of treatment would be consistent medical care, Your Honor, yes. But if the I.J. doesn't address those elements in the opinion, it seems like we've got a problem under Cole and Castillo to consider them. The I.J. did look to other evidence in the record as far as his mental well-being is concerned, Your Honor. Much of that evidence, granted, was evidence of how he acts in detention. But I think the immigration judge is still permitted to draw some conclusion as to the severity of condition based on that evidence. Yes. You assume we find that the BIA and the I.J. denied relief on the ground that Garcia Yanez did not prove that he would more likely than not be personally tortured if he was institutionalized in Mexico. Did the petitioner waive that issue on appeal? Because the appeal seems to be focused almost exclusively on the first link in the chain that petitioner would decompensate, which would then lead to his institutionalization. That's the government's position, Your Honor, yes. It's set forth at pages 17 to 19. I think the most telling aspect of the opening brief in that respect is at page 24, where petitioners state that the issue is only whether he will be institutionalized upon being removed. There's no conclusion you can draw from that other than that the only argument that was focused on in the brief is that one, and no argument was made with respect to the nature of the harm he might experience in an institution, which is a plainly distinct question. But doesn't that mean the argument you made was that the I.J., the agency made a dispositive specific intent determination, which maybe comes through in the BIA opinion, but we haven't had much success finding in the I.J.'s opinion. So that's, I guess, the concern is whether it's waived or not. Your brief seems to address a different aspect of the conditions in an institution that Garcia-Yanis would be likely to face. I suppose, Your Honor, I have two responses to that. The first is that we've already sort of discussed the significant overlap there is between the conditions that he will face and whether those conditions are accompanied by the necessary specific intent. The second is that it's waiver nonetheless on the petitioner's part. I guess that gets specifically to Judge Koh's question as to whether that issue is waived as well. Thank you, Mr. Tucker. If there's nothing else, I'm prepared to conclude. No further questions. Thank you. For the reasons stated in the brief and here today, the government requests the petition be denied. Thank you. Okay. Thank you. Two minutes for rebuttal. I want to address a couple points. With respect to intent, the BIA actually found that there was specific intent. At page 4 of the BIA's brief, it said that the use of physical and chemical restraints as well as physical and sexual abuse that occurs in mental health institutions in Mexico constitutes torturous conduct imposed upon patients with the specific intent to inflict severe pain and suffering. And I cite this part of the BIA's opinion at pages 36 and 37 of my opening brief. So we did not dispute whether specific intent had been decided or required because we were satisfied that the BIA and IJ had found that there would be the requisite specific intent. Again, with the IJ, the quotes that you raised, Judge Koh, in your discussion with my opposing counsel. I would also note that my opposing counsel has said that the agencies discussed Dr. Cook's testimony. Wait a minute. I'm sorry. So if you're arguing that the IJ and BIA did decide specific intent, but then you didn't address it in your opening brief, then why isn't that a forfeiture or waiver? So I do. At pages 36 to 37, I highlight that they did find that this specific, these findings. And so I did not, you know, then further. I'm looking at 37 of your brief and it just says the IJ recognized that individuals with minor and significant mental illnesses and disabilities were involuntarily hospitalized in Mexico and that conduct rising to the level of torture occurred in such institutions. I don't, I mean, you do say the further, the, anyway, I don't know if specific intent, well, go ahead. I would also just point to page 36 where I say the IJ and BIA recognized the evidence in the record reflected torture in mental health institutions, where I cite page 4 of the BIA's opinion. With respect to your question on substantial evidence, you know, Judge Koh, you pointed to a page at 953 where they found eight institutions with, that used physical restraints. But if you look at further, further in that same report at page 955, it discusses how 10 institutions use chemical restraints and over-medication. At 956, it discusses lifetime segregations. At 959, it discusses sex trafficking and sex abuse. So that eight of the institutions is limited just to that particular form of torture. And there are other reports about how widespread it is. At 1170, we have a report where even the Mexican government has recognized widespread abuses in mental health institutions. Right, but the 10 is out of 25 blacklisted facilities. So I guess I'm still at the point of why is it more likely than not that Mr. Garcia-Inez will not go to the other 15 institutions. Even if I agree with you, over-medication is 10, facilities, prolonged use of restraints is 8, you still have the fact that Disability Rights International looked at 25 facilities. Well, it's more likely than not. So it's a more than 50% chance that he will be subject to torture. I'm sorry, 10 out of 25 to me is not more than 50%. Neither is 8 out of 25. But 18 out of 25 would be. Ms. Kekavar, am I to take this then as a concession that the agency did in fact reach that last link in the chain and that if we find substantial evidence in the record for that, that's dispositive of the CAT claim? I would focus very much on Dr. Cook's testimony. You have focused on that. But I think our problem is if the agency reached this last link in the chain, Dr. Cook's testimony is neither highly probative nor dispositive of that last link, and we do have record evidence that I think Judge Koh has gone through in some detail with you that provides that. So if your view is also the government's view that they did reach this one way or the other, does that not avoid us needing to require that first link that is the basis of your argument? We have this very extensive opinion, and then we have two very conclusory statements from the IJ. Is that enough? No, I don't think that's enough. Why not? Because the entire opinion to that point had been focused on whether or not he would end up in an institution. And then they recognized, yes, these institutions, torture can occur. And then when it concludes that nonetheless he can't demonstrate that he personally will be subject to such conditions, the immigration judge isn't citing anything in the record that Mr. Garcianis was relying on. And so I think embedded in that conclusion is the agency's conclusion that he would not be institutionalized in the first place. Meaning embedded in there, it's a way of summarizing its conclusion as to the decompensation point that is the basis of your petition. Correct. All right. If there are no further questions, we would ask this court to remand to the agencies for further proceedings. Thank you. Okay. Thank you very much. I want to thank all counsel for your very helpful arguments today. We are adjourned for today. And for our visitors, our law clerks will have a 30-minute Q&A with all of our visitors, and then Judge Johnstone and I will also then follow up with a Q&A with our visitors as well. Okay. Thank you very much. All rise.
judges: HURWITZ, KOH, JOHNSTONE